DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WYNNE BUILDING CORPORATION,**
Appellant,

v.

**SPANISH LAKES COUNTRY CLUB VILLAGE HOMEOWNER'S ASSOCIATION, INC.,** and **SPANISH LAKES-GOLF VILLAGE HOMEOWNERS ASSOCIATION, INC.,**
Appellees.

No. 4D2025-2169

[February 11, 2026]

Appeal of a nonfinal order from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Steven J. Levin, Judge; L.T. Case No. 562022CA001626AXXXHC.

J. Allen Bobo and Daniel C. Guarnieri of Lutz, Bobo & Telfair, P.A., Sarasota, for appellant.

Jacob E. Ensor of Ross Earle Bonan Ensor & Carrigan, P.A., Stuart, for appellees.

LOTT, J.

Florida Rule of Civil Procedure 1.222 allows "[a] mobile homeowners' association" to bring a class action "in its name on behalf of all homeowners concerning matters of common interest," not subject to Rule 1.220's normal class-action strictures. This appeal concerns whether multiple mobile homeowners' associations may bring a single class action under the rule. We hold that they may not; the rule allows one association to bring a given claim as a class action on behalf of its own members. But we also note that the trial court has broad discretion to join and consolidate related claims, including distinct Rule 1.222 class actions.

Appellees, Plaintiffs below, are two mobile homeowners' associations. They are distinct homeowners' associations representing distinct sets of member-homeowners, but they sit on geographically proximate land owned by the same owner, Appellant, Defendant below, Wynne Building Corporation.

As it concerns this appeal, Plaintiffs brought a six-count amended complaint against Wynne.[1] Each association brought three counts seeking, respectively, declaratory relief related to an allegedly unreasonable rent increase in 2021-22; declaratory relief related to an allegedly unreasonable rent increase in 2022-23; and damages related to those increases. In allegations common to all counts, Plaintiffs alleged that "[t]he affected homeowners have a right to be represented as a Class pursuant to Florida Rules of Civil Procedure 1.222 and Florida Statute § 723.037."

In considering whether to certify the claims as a Rule 1.222 class, the trial court found that "the allegations pertaining to the lot rental increases concern matters of common interest to all mobile park homeowners and, as such, the Amended Complaint properly alleges a class action pursuant to Rule 1.222."

We hold the trial court erred by certifying the six claims "concern[ing] matters of common interest to all mobile park homeowners [of both associations]" as "a class action." The trial court should have considered whether *each* association was permitted under the rule to bring its claims on behalf of *its own* membership.[2]

Rule 1.222 states:

> A mobile homeowners' association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all homeowners concerning matters of common interest, including, but not limited to: the common property; structural components of a building or other improvements; mechanical, electrical, and plumbing elements serving the park property; and protests of ad valorem taxes on commonly used facilities. If the association has the authority to maintain a class action under this rule, the association may be joined in an action as representative of that class with reference to litigation and

---

[1] The proceedings prior to the filing of the amended complaint, as well as the settlement of the third homeowners' association that was originally part of the proceedings, are irrelevant to this appeal.

[2] "The standard of review for the trial court's interpretation of the rules of civil procedure [] is de novo." *Carl Domino, Inc. v. Dixon*, 358 So. 3d 29, 32 (Fla. 4th DCA 2023) (citing *Donado v. PennyMac Corp.*, 174 So. 3d 1041, 1042 (Fla. 4th DCA 2015)).

disputes involving the matters for which the association could bring a class action under this rule.  Nothing herein limits any statutory or common-law right of any individual homeowner or class of homeowners to bring any action which may otherwise be available.  An action under this rule shall not be subject to the requirements of rule 1.220.

The plain language and context of the rule, including the language "[a] mobile homeowners' association," "in its name on behalf of all [its] homeowners," and "the association," contemplates a single mobile homeowners' association bringing a class action on behalf of all homeowners of that association.  Allowing multiple associations to band together to bring a single action that is common to all members across multiple associations is an interpretation the text will not bear.

The second sentence, for example, would be nonsensical in such a case. *See Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 947 (Fla. 2020) (textual interpretation "requires a methodical and consistent approach involving faithful reliance upon the natural or reasonable meanings of language and choosing always a meaning that the text will sensibly bear by the fair use of language") (cleaned up).  How could multiple homeowners' associations be joined as defendant representative(s) of a single class?  To the contrary, the switch from the indefinite article "a" in the first sentence to the definite article "the" in the second sentence (especially in the second clause) contemplates a *particular* association bringing a class action contemplated by the rule on behalf of its own membership.  The "use of 'the' rather than 'a' . . . presupposes that these are particular and definable actors who must be involved for the statute to apply." *Brito v. Salas*, 2025 WL 3765686, *6 (Fla. Dec. 30, 2025).  "The definite article, the, usually introduces a particular thing or individual group, one that was mentioned before or whose existence is known or presumed to be known." *Id.* at *7 (cleaned up).

This reading also accords with our interpretations of rule 1.221, an analogous rule providing for class actions by condominium and non-mobile homeowners' associations. *See, e.g., Brazilian Court Hotel Condo. Owners Ass'n, Inc. v. Walker*, 584 So. 2d 609, 611 (Fla. 4th DCA 1991) ("Florida Rule of Civil Procedure 1.221 provides the procedural means by which the Association may represent unit owners as a class and requires that the action involve matters of common interest."); *Kesl, Inc. v. Racquet Club of Deer Creek II Condo., Inc.*, 574 So. 2d 251, 253 (Fla. 4th DCA 1991) (contemplating "an association plaintiff . . . acting under rule 1.221 on behalf of all unit owners to enforce their rights under the agreement"); *id.* at 256 (Gunther, J., concurring in part and dissenting in part) ("[Rule

1.221] is the procedural vehicle which allows a condominium association to sue and be sued as representative of the class of condominium unit owners."); *Four Jay's Constr., Inc. v. Marina at Bluffs Condo. Ass'n, Inc.*, 846 So. 2d 555, 557 (Fla. 4th DCA 2003) ("This rule allows class actions to be brought or defended by a condominium association in its representative capacity."); *see also Homeowner's Ass'n of Overlook, Inc. v. Seabrooke Homeowners' Ass'n, Inc.*, 62 So. 3d 667, 670 (Fla. 2d DCA 2011) ("The sole requirement for the bundling of a [Rule 1.221] class is that the members of the association have a common interest regarding the common elements of the property." (citation omitted)).

And we reached a similar conclusion in *Condominium Owners Organization of Century Village East, Inc. v. Century Village East, Inc.*, 428 So. 2d 384 (Fla. 4th DCA 1983). There, 251 condo buildings, each represented by their own association, sought to bring an action under Rule 1.221. We noted it was "undisputed that ***each*** of the individual condominium associations is a representative of the units and owners of a particular building, and, as such, is entitled to bring ***a class action*** pursuant to [rule] 1.221." *Id.* at 386 (emphasis added). But we held "without difficulty" that an umbrella organization for the condo associations could not bring a single rule 1.221 action for all buildings and rejected "the concept of class action of class actions." *Id.* We so hold here as well.

We also note that in *Century Village East*, in affirming the trial court's dismissal of the class action, we emphasized that trial courts should have "maximum discretion" in managing their dockets. *Id.* at 386. We explained that individual cases could still be consolidated, or the plaintiffs might amend their complaint and persuade the trial court that all or at least some of them could be joined in a single complaint and possibly severed later. *Id.* at 386–87.

So too, here. The trial court may well find on remand that all of the counts ought to proceed in one case and be heard in a single consolidated trial.

But in determining whether "an association" is permitted to bring a given claim as a class action on behalf of its members using the procedural mechanism of Rule 1.222, the trial court must undertake the commonality inquiry as to each claim brought by each association vis-à-vis that association's membership.

If the court finds, after conducting this inquiry, that multiple factually-related Rule 1.222 class actions are properly before it, then it may exercise

its considerable discretion to address those actions in a consolidated proceeding, within the normal bounds of the rules.

*     *     *

In sum, we remand so that the trial court may assess in the first instance whether each association may maintain each of their respective counts as a Rule 1.222 class action.[3]  From there, the court may exercise

---

[3]  We offer only a few short points in response to the dissent.

First, the relationship between the class action procedure in Rule 1.222 and the discretion to join and consolidate claims embodied in Rule 1.270 explains the dissent's misapprehension.

The claims here ultimately belong to a number of individual homeowners, each of whom is a member of a single association.  The class action mechanism generally allows the "class" to bring as one claim the summated claims of all of the class members.  Rule 1.222 allows a procedural shortcut for a mobile homeowner's association to (relatively) easily bring as a class claim the summated claims of its homeowner-members.  Once a court certifies that the summated individual claims meet Rule 1.222's commonality requirement, then that class claim may be treated as any other single claim in the litigation.  That class claim may be joined and consolidated for litigation and trial with other claims (which may or may not also be certified class claims) within the broad discretion afforded to the trial judge.

What Rule 1.222 does not allow is a shortcut for multiple associations to bring summated claims that may be common to all homeowners across the multiple associational memberships as a single class claim—a "class action of class actions." That was what we rejected in *Century Village East*.  We do not and need not pass on whether other mechanisms, including Rule 1.220, might be available for multiple HOAs to proceed in a single class claim.

Second, while in ordinary interpretation the singular should generally be construed as the plural, we only so construe "where the context will permit." § 1.01, Fla. Stat.; *accord* Scalia and Garner, *Reading Law* at 130 (Thomson/West 2012) ("The rule is simply a matter of common sense and everyday linguistic expression.").  Here, as explained, the context and the text considered as a whole do not allow for one action by multiple associations made up of households belonging to multiple associations.

Third, we cannot say the error is harmless.  Rather, we have *no idea* if the error is harmless, because the trial court conducted the wrong commonality inquiry. We remand to the trial court so that it can conduct the correct inquiry, which may or may not leave the parties in a functionally similar position to where they are now.

its discretion as to whether any or all of the claims it certifies as a class action should or should not be consolidated going forward.

*Reversed and remanded.*

LEVINE, J., concurs.
CIKLIN, J., dissents with opinion.

CIKLIN, J., dissenting.

This appeal turns on a narrow question: Whether Florida Rule of Civil Procedure 1.222 prohibits more than one mobile homeowners' association from proceeding together in a single action raising matters of common interest.

I dissent for three primary reasons: rule 1.222 does not forbid multiple associations from proceeding together, an interpretation to the contrary is not supported by the plain language of rule 1.222, precedent, or the rules of construction, and any error here is harmless. Respectfully, the majority misses the mark because the rule does not contain any such prohibition, and the majority reaches a contrary result *only by supplying words* the Florida Supreme Court never adopted.

## I. The Text of Rule 1.222

Rule 1.222 provides that "[a] mobile homeowners' association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all homeowners concerning matters of common interest . . . ." The operative language authorizes an association to act; it does not restrict how many associations may do so in a single proceeding. The rule contains no express limitation barring joint actions, collective pleadings, or coordinated prosecution by multiple associations where the claims raise "matters of common interest."

In effect, the majority converts silence into prohibition. The majority does not identify any language in rule 1.222 stating that multiple associations may not proceed together. Instead, it reasons that because the rule contemplates an association acting on behalf of its own members, joint proceedings must be forbidden. The majority's conclusion rests almost entirely on the rule's use of the singular—"a mobile homeowners' association"—from which it infers an exclusivity requirement: one association per class action. But Florida law has long recognized that the singular includes the plural unless a contrary intent is clear, and nothing in rule 1.222 suggests an intent to impose a numerical restriction on

6

plaintiffs. *See* § 1.01(1), Fla. Stat. ("In construing these statutes . . . , where the context will permit . . . [t]he singular includes the plural and vice versa."); *Saia Motor Freight Line, Inc. v. Reid*, 930 So. 2d 598, 599 (Fla. 2006) (noting that when interpreting procedural rules, courts apply the same principles of construction applicable to statutes, beginning with the rule's plain language).

Had the Supreme Court intended to impose a "one association only" limitation, it could have done so explicitly. It is not within the province of our court to modify a rule of the Florida Supreme Court. Courts are not at liberty to add limitations merely because they might have been sensible or administratively neat.

## II. Reliance on Rule 1.221 and *Century Village*

The majority's reliance on cases interpreting rule 1.221 and on *Condominium Owners Organization of Century Village East, Inc. v. Century Village East, Inc.*, 428 So. 2d 384 (Fla. 4th DCA 1983), is misplaced.

First, the cases addressing rule 1.221 cited by the majority provide no guidance on the issue raised here. The cases do not involve or address multiple condominium or homeowners' associations. Thus, it is unclear how the majority concludes that its interpretation of rule 1.222 "accords with the way our [c]ourt has construed rule 1.221."

Second, I will assume, arguendo, that majority properly employs its tortured "a"/"the" analysis in lieu of applying the general rule that the singular includes the plural where context permits. Both rules 1.221 and 1.222 begin with "A" ("A homeowners' or condominium association" and "A mobile homeowners' association"). But the second sentence of rule 1.221 says, "If **an** association has the authority . . . ," whereas the second sentence of rule 1.222 says, "If **the** association has the authority . . . ." If this a/the analysis is taken to its logical extreme, does this mean we must construe rules 1.221 and 1.222 differently? With respect to rule 1.221, does the failure to switch to a definite article initially in the second sentence mean we must construe rule 1.221 to not contemplate a particular association? (In reality, of course not. I merely point this out to demonstrate that, when one strays from the plain meaning to such tortured analyses, the consequences include inconsistency.)

Third, *Century Village*, 428 So. 2d 384, is distinguishable. It involved a class action brought by 251 condominium associations, each for a separate building, with separate damages requiring separate jury verdicts,

and the suit included an improper party - an umbrella organization that had suffered no damages. *Id.* at 385-86.

## III. An Unnecessary Procedural Detour & Trial Court Discretion

Reversing under these circumstances elevates form over substance and takes the parties through an unnecessary procedural detour, given the harmless nature of any error. Decisions concerning joinder, coordination of related actions, and the orderly administration of overlapping litigation are traditionally committed to the sound discretion of the trial court. Even assuming ambiguity in rule 1.222's phrasing, that ambiguity does not eliminate the trial court's broad discretion to manage related claims raising common issues. Where no prejudice is shown and the outcome is unchanged, appellate courts must be cautious about imposing procedural hurdles the rule itself does not mandate--particularly when our appellate court edict does nothing more than further complicate a trial judge's job. Where, as here, the same defendant, the same alleged conduct, and the same legal issues are presented, and no prejudice is shown, an appellate court should be reluctant to reverse a trial judge's discretionary case-management decision merely to require a different and strained procedural sequence leading to the same result. As we emphasized in *Century Village*, trial courts retain "maximum discretion" in managing related actions, including consolidation and joinder. 428 So. 2d at 386. The majority invokes that principle only after first stripping the trial court of discretion by imposing a prohibition not found in the rule.

Reversal on a purely procedural sequencing issue—where the same claims will proceed before the same court through consolidation—does not advance the resolution of the dispute. The majority nevertheless intervenes to correct a procedural formality that causes no prejudice while predictably increasing litigation costs and attorney's fees that, under the governing statutory framework, will ultimately be borne by the losing party.

## VII. Conclusion

For these reasons, I respectfully dissent.

*      *      *

***Not final until disposition of timely-filed motion for rehearing.***

8